**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY G.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 23 C 2876** |
| v. | ) | |
| | ) | **Magistrate Judge** |
| **MARTIN J. O'MALLEY,** | ) | **Maria Valdez** |
| **Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This action was brought under 42 U.S.C. § 405(g) to review the final decision

of the Commissioner of Social Security granting in part and denying in part

Plaintiff Jeffrey G.'s claims for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). The parties have consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 12]

is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 20]

is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security
Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last
name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of
Civil Procedure 25(d).

## BACKGROUND

### I.   PROCEDURAL HISTORY

On June 21 and June 24, 2019, respectively, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI, alleging disability since January 29, 2019. The claims were denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). A video hearing before an ALJ was held on October 15, 2021. Plaintiff appeared and testified at the hearing via video, and a vocational expert testified via telephone. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative.

On August 2, 2022, the ALJ granted in part and denied in part Plaintiff's claims for benefits. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II.   ALJ DECISION

In her decision, the ALJ first set out her holding as follows:

> After careful consideration of all the evidence, the Administrative Law Judge concludes that the claimant was "disabled" within the meaning of the Social Security Act from October 16, 2018 through January 28, 2020. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability was established. On January 29, 2020, medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity from that date through the date of this decision. Thus, the claimant's disability ended on January 29, 2020.

(R. 29.) In reaching that conclusion, the ALJ analyzed Plaintiff's claims in accordance with the sequential evaluation processes established under the Social Security Act, including the initial five-step evaluation process for determining disability and the additional eight and seven-step evaluation processes necessary to determine if a disability continues. *See* 20 C.F.R. §§ 404.1520(a)(4); 404.1594; 416.994.

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 16, 2018, the date he became disabled. The ALJ then concluded that, from October 16, 2018 through January 28, 2020, the period during which Plaintiff was under a disability, Plaintiff had the following severe impairments: chronic venous insufficiency; obesity; diabetes; neuropathy; cellulitis; and methicillin-resistant staphylococcus aureus (MRSA). The ALJ concluded at the next step that from October 16, 2018 through January 28, 2020, the period during which Plaintiff was disabled, the severity of Plaintiff's chronic venous insufficiency met the severity of the listed impairment set forth in section 4.11(B) of 20 C.F.R. Part 404, Subpart P, Appendix 1. That listing is for chronic venous insufficiency "of a lower extremity with incompetency or obstruction of the deep venous system and . . . [s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." In keeping with her finding of listing-level severity, the ALJ then determined that Plaintiff was under a disability, as defined by the Social Security Act, from October 16, 2018 through January 28, 2020.

3

Moving on to the next steps of the evaluation processes, the ALJ concluded that Plaintiff had not developed any new impairments since January 29, 2020, the date Plaintiff's disability ended. Relatedly, the ALJ determined that Plaintiff's current severe impairments are the same as that present from October 16, 2018 through January 28, 2020. The ALJ then determined that beginning January 29, 2020, Plaintiff has not had an impairment or combination of impairments that meet or medically equal any listed impairments. Next, the ALJ concluded that medical improvement occurred as of January 29, 2020. The ALJ further found that the medical improvement that occurred is related to Plaintiff's ability to work because he no longer met any listed impairments. The ALJ then determined that, beginning on January 29, 2020, Plaintiff has had the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid exposure to extreme cold, heat, wetness, pulmonary irritants, hazards, and vibrations. Consistent with her RFC finding, the ALJ determined that, beginning January 29, 2020, Plaintiff has been capable of performing his past relevant work as a production coordinator. Accordingly, the ALJ concluded that Plaintiff was disabled from October 16, 2018 through January 28, 2020, but that Plaintiff's disability ended on January 29, 2020.

## DISCUSSION

### I.   ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

In determining whether a plaintiff who was found disabled continues to be disabled, the ALJ follows an eight-step process for a Title II (DIB) claim and a

seven-step process for a Title XVI (SSI) claim. *Alvarado v. Colvin*, No. 1:14-CV-1090-JES-JEH, 2015 WL 4111504, at \*14 (C.D. Ill. July 7, 2015); 20 C.F.R. §§ 404.1594; 416.994. In the first step for the Title II claim, the ALJ must determine if the plaintiff is engaging in substantial gainful activity; if so, the plaintiff is no longer disabled. 20 C.F.R. § 404.1594(f)(1). For the Title XVI claim, the performance of substantial gainful activity is not a factor used to determine if the plaintiff's disability continues. 20 C.F.R. § 416.994(b)(5). If the plaintiff is not engaged in substantial gainful activity, step two for the Title II claim and step one for the Title XVI claim require the ALJ to determine whether the plaintiff has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the plaintiff does, his disability continues. 20 C.F.R. §§ 404.1594(f)(2); 416.994(b)(5)(i).

At step three of the Title II claim and step two of the Title XVI claim, the ALJ must determine whether medical improvement has occurred. 20 C.F.R. §§ 404.1594(f)(3); 416.994(b)(5)(ii). Medical improvement is any decrease in the medical severity of the plaintiff's impairment(s) that were present at the time of the most recent favorable medical decision, and medical improvement is established by improvement in symptoms, signs, and/or laboratory findings. 20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i). If medical improvement has occurred, the analysis proceeds to the fourth step for the Title II claim and the third step for the Title XVI claim. If not, the analysis proceeds to the fifth step for the Title II claim and the fourth step for the Title XVI claim.

At step four of the Title II claim and step three of the Title XVI claim, the ALJ must determine whether the medical improvement is related to the ability to work. 20 C.F.R. §§ 404.1594(f)(4); 416.999(b)(5)(iii). Medical improvement is related to the ability to work if it results in an increase in the plaintiff's capacity to perform basic work activities. 20 C.F.R. §§ 404.1594(b)(3); 416.994(b)(1)(iii). If the ALJ determines that medical improvement is related to the ability to work, the analysis proceeds to step six of the Title II claim and step five of the Title XVI claim.

At step five of the Title II claim and step four of the Title XVI claim, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. §§ 404.1594(f)(5); 416.994(b)(5)(iv). There are two groups of exceptions. 20 C.F.R. §§ 404.1594(d), (e); 416.994(b)(3), (b)(4). If an exception from the first group applies, the analysis proceeds to the next step. If an exception from the second group applies, the plaintiff's disability ends. If no exception applies, the plaintiff's disability continues.

Step six of the Title II claim and step five of the Title XVI claim require the ALJ to determine whether all the plaintiff's current impairments in combination are severe. 20 C.F.R. §§ 404.1594(f)(6); 416.994(b)(5)(v). If all current impairments in combination do not significantly limit the plaintiff's ability to do basic work activities, the plaintiff is no longer disabled. If they do, the analysis proceeds to the next step. At step seven of the Title II claim and step six of the Title XVI claim, the ALJ must assess the plaintiff's residual functional capacity based on the current impairments and determine if he can perform past relevant work. 20 C.F.R. §§

7

404.1594(f)(7); 416.994(b)(5)(vi). If the plaintiff has the capacity to perform past

relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, at which the burden falls on the Commissioner, the ALJ must

determine whether other work exists that the plaintiff can perform. 20 C.F.R. §§

404.1594(f)(8); 416.994(b)(5)(vii). If the plaintiff can perform other work, he is no

longer disabled. If the plaintiff cannot perform other work, his disability continues.

## II.     JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus

limited to determining whether the ALJ's findings are supported by substantial

evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.

2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even

in the absence of overwhelming evidence in support: "whatever the meaning of

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not

high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and

means only – 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019)

(citations omitted). This Court may not substitute its judgment for that of the

Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

9

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.   ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to fulfill her heightened duty to build a complete record for a *pro se* claimant, thereby causing a prejudicial gap; (2) the ALJ failed to support her finding that there was a medical improvement related to Plaintiff's ability to work; and (3) the ALJ failed to consider how Plaintiff's physical and mental impairments, in combination, would result in an inability to sustain the on-task and attendance requirements of full-time work. Each argument will be addressed below in turn.

### A.   The ALJ's Duty to Build a Complete Record

As stated above, Plaintiff was informed of his right to representation but he chose to proceed at the administrative level without the assistance of an attorney or other representative. Plaintiff, now represented by counsel, does not affirmatively argue that his waiver of representation was invalid. According to Plaintiff, "[w]hether or not the waiver is valid is beside the point, as the ALJ failed to satisfy her heightened duty to ensure that the record for a *pro se* claimant such as Plaintiff

10

is developed fully and fairly." (Pl.'s Mot. at 8.) Pertinent to Plaintiff's argument, an ALJ has a duty to develop a full and fair record even if a claimant is represented by counsel. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). "This duty is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously [ ] probe into, inquire of, and explore for all relevant facts." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal quotations and citation omitted). However, "even when a claimant is unrepresented, the Commissioner is granted broad discretion in determining how much evidence to gather." *Marteau v. Colvin*, No. 12 C 4058, 2015 WL 639266, at *4 (N.D. Ill. Feb. 13, 2015) (citation omitted).

In this case, the Court finds that the ALJ satisfied her heightened duty to develop the record. The record reflects that, after the hearing, the ALJ received additional records from Plaintiff's treatment providers. Those records comprised 855 pages in total. (R. 644-1499.) The ALJ cited to the additional evidence thirty times throughout her decision. (*Id.* at 33-34, 37-39.)[3] Given the ALJ's retrieval and detailed analysis of an additional 855 pages of documents, the Court finds that the ALJ sufficiently explored all relevant facts and met her enhanced record-building duty. *See Seban v. Massanari*, No. 01 C 1749, 2001 WL 1654766, at *10 (N.D. Ill. Dec. 20, 2001) (finding that ALJ met heightened duty to unrepresented claimant

---

[3] Plaintiff maintains that "[t]hough the ALJ was in receipt of over 500 pages of records from Kenneth Young [Center], she did not refer to them in her decision." (Pl.'s Mot. at 9.) That statement is false. The ALJ cited the documents from Kenneth Young Center nine times in her decision.

where "the record was sufficient to provide the ALJ with an understanding of Plaintiff's alleged disability").

The Court also finds that Plaintiff has not demonstrated prejudice with respect to any absent evidence. Pertinent to that determination, following the hearing, the ALJ sent three letters to Plaintiff (dated April 26, May 25, and June 1, 2022) in which she proffered the additional records she had retrieved. (R. 308-13.) The letters informed Plaintiff, *inter alia*, that he could submit "any additional records [he] wish[ed] [the ALJ] to consider (including a report from the treating physician)." (*Id.* at 308, 310, 312.) However, Plaintiff did not respond to the letters, nor did he submit any additional records to the ALJ. Rather, on September 2, 2022 – after the ALJ rendered her decision – Plaintiff sent a letter to the Appeals Council that appended a description of records Plaintiff believed were pertinent. (*Id.* at 315-321.)

For several reasons, the Court concludes that there is a lack of prejudice with respect to the additional evidence Plaintiff points to. As an initial matter, much of the evidence described by Plaintiff in his letter was already part of the administrative record before the ALJ. (*See* R. 620-633, 652-658, 733, 1477-1481.) Furthermore, though he sent the letter to the Appeals Council, Plaintiff merely described documents and apparently did not submit the listed records themselves to the Social Security Administration. Nor has Plaintiff submitted the additional records in proceeding before this Court. *See Oraha v. Colvin*, No. 14 C 10440, 2016 WL 3027853, at *7-8 (N.D. Ill. May 27, 2016) (finding that ALJ satisfied heighted

12

duty to develop the record and Plaintiff failed to show prejudice because he did "not produce[] any additional records to support his disability claim despite being represented by experienced counsel on appeal"); *Marteau*, 2015 WL 639266 at \*4 ("Plaintiff's brief does not offer any proof of what was contained in Dr. Gagnon's records, let alone demonstrate that the failure to consider the records was prejudicial."). And, ultimately, the Court is not convinced that any of the additional records Plaintiff cites would have changed the conclusions reached by the ALJ.[4] *See Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020) ("[A] significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly. There was no such significant omission here.") (citation and internal quotations omitted). Accordingly, the Court rejects Plaintiff's first argument.

### B.      Medical Improvement Related to Plaintiff's Ability to Work

As set forth above, the ALJ concluded that medical improvement occurred as of January 29, 2020 such that thereafter Plaintiff no longer met listing-level severity for chronic venous insufficiency. (R. 37.) In reaching that determination, the ALJ reasoned that "[o]n January 29, 2020, a physical exam showed 'right distal leg erythema improved resolved'" and "[s]ubsequent physical exams revealed no wounds, lesions, or dermatitis [of] claimant's legs or feet." (*Id.* at 37-38.) For his second argument, Plaintiff contends that "[t]he ALJ failed to support her finding

---

[4] In particular, with respect to Plaintiff's argument concerning his alleged need to use a walker (discussed further below), the descriptions of documents provided by Plaintiff only mention his use of a walker three times. (R. 319-320.)

that there was medical improvement *related to Plaintiff's ability to work*." (Pl.'s Mot. at 10 (emphasis added).)

It is true that "once an ALJ finds medical improvement, she typically must explain whether the improvement is related to the ability to work." *Diana S. v. Kijakazi*, No. 19-CV-6344, 2022 WL 2316201, at *8 (N.D. Ill. June 28, 2022) (citing 20 C.F.R. § 404.1594). However, "when an ALJ finds disability based on the fact that a claimant's impairment met a listing, and subsequently finds that the claimant no longer meets the same listing, the applicable regulation concludes that medical improvement related to the ability to work has occurred." *Id.* (citing 20 C.F.R. § 404.1594(b)(3)); *see also Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018) ("The regulations provide that a claimant has medically improved in a manner related to her ability to work if she no longer meets a listing that she had met at the time of the last favorable decision."). Here, in accordance with the applicable regulation, the ALJ expressly concluded that "medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing." (R. 38.). Because the ALJ explicitly and reasonably determined that Plaintiff no longer met the listing, it necessarily follows that the medical improvement was related to Plaintiff's ability to work. *See Elizabeth A. D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *7 (N.D. Ill. Jan. 15, 2021) ("The ALJ sufficiently explained that the medical improvement that occurred was 'related to the ability to work because [the claimant] no longer [had] an impairment or

14

combination of impairments that meets or medically equals the severity of a listing.'
Because the ALJ's finding of medical improvement was based on [the claimant] no
longer meeting Listing 12.04, the ALJ correctly determined that the improvement
was related to her ability to work and proceed to analyze her current RFC."). Thus,
Plaintiff's second argument must fail.

Though not necessary to its holding on Plaintiff's second argument, the Court
notes that, in advancing the argument, Plaintiff points to his alleged use of a walker
and asserts that the ALJ did not properly consider his continued need for an
assistive device. (Pl.'s Mot. at 11.) The Court finds Plaintiff's arguments in that
regard unavailing. In her decision, the ALJ noted Plaintiff's allegations that he had
difficulty standing and walking and used a walker to ambulate outside of his home.
The ALJ then analyzed Plaintiff's ambulation and alleged walker-use as follows:

> Regarding ambulation, the record supports the claimant's allegations of
> difficulty with standing and walking due to significant obesity and the
> limiting effects of leg swelling and peripheral neuropathy in his lower
> extremities. However, the record does not demonstrate ineffective
> ambulation or an inability to walk without an aid. At outpatient
> appointments in January 15 and 29, 2020, treating physician Yaqoob
> Syed noted that the claimant used a walker, stating that he developed
> weakness in his left leg during his prolonged nursing home stay.
> However, one month earlier [a]t the consultative [examination], gait was
> abnormal because it was wide-based but no assistive device was used
> and claimant was able to bear weight normally. Neurologic exam was
> normal and he was assessed with diabetes mellitus, diabetic
> neuropathy, venous insufficiency (right lower extremity), and HTN.
> Claimant had mild difficulty with tandem and off/on exam table, but
> none with toes, heels, squat. In January, the claimant completed
> reconditioning to prevent reliance on the walker. Also, treating
> physician David Richards, who treated the claimant from July 2020-
> December 2021, did not report any cane or walker use at the claimant's

appointments.[5] . . . The claimant reported difficulty with walking in January-March 2022; otherwise, no podiatrist reported seeing the claimant use a cane or other walking aid, nor observations of unstable gait.

(R. 38-39 (citations omitted).) Given this detailed analysis, the Court finds that the ALJ sufficiently considered (and discounted) Plaintiff's alleged walker-use and built the requisite logical bridge. The Court declines Plaintiff's invitation to reweigh the evidence in relation to his ambulation, as that is an endeavor the Court cannot undertake. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff also contends that the ALJ failed to account for the exacerbating effects of his obesity. (Pl.'s Mot. at 12.) The Court rejects that argument. The ALJ expressly considered Plaintiff's obesity "singly [and] in combination with other medically determinable impairments." (R. 37.) The ALJ acknowledged that Plaintiff's impairments, including his obesity, "would reasonably be expected to restrict the claimant to sedentary levels of standing and walking and with only occasional postural activities." (*Id.* at 39.) The ALJ explained that, on account of Plaintiff's obesity, he precluded Plaintiff from "any exposure to hazards and any ladder climbing." (*Id.*) So, in actuality, the ALJ fulsomely addressed Plaintiff's obesity and its effects. Furthermore, the problem for Plaintiff with respect to his obesity argument is that he does not specifically explain, beyond generalizations, how his obesity impacts his other alleged physical impairments. *See Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015) (claimant's challenge to the ALJ's

---

[5] The Court notes that, in actuality, Dr. Richards did note Plaintiff's use of a walker on a single occasions in December 2021. (R. 659.)

assessment of obesity fails where the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ"); *Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for her obesity lacks merit. Notably, other than general speculations that morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized.").

**C.     Plaintiff's Physical and Mental Impairments In Combination**

For his third argument, Plaintiff contends that the ALJ failed to sufficiently consider his physical and mental impairments in combination. (Pl.'s Mot. at 13-15.) Pertinent to that assertion, in determining that Plaintiff's mental limitations are nonsevere, the ALJ noted that Plaintiff had been diagnosed with adjustment disorder and anxiety disorder "but multiple psychiatrists concluded that the claimant did not require psychoactive medications" and "[t]he record does not demonstrate outpatient treatment for mental impairments." (R. 33.) The ALJ also assessed the "paragraph B" criteria and ultimately determined that Plaintiff's "medically determinable mental impairments caused no more than 'a mild' limitation in any of the functional areas." (*Id.* at 34.) Additionally, the ALJ noted that the "State agency psychological consultants opined that the claimant's

17

medically determinable mental impairments were not severe and caused no more than mild limitations." (*Id.* at 40.)

The Court finds no error with respect to the ALJ's analysis of Plaintiff's alleged mental limitations. The Court also finds that Plaintiff has not demonstrated that his mild mental limitations coupled with his physical impairments required any corresponding accommodations for off-task time or attendance. Moreover, and in any event, the Court concludes that Plaintiff's argument that the ALJ did not sufficiently consider his impairments together in combination fails as it amounts to an impermissible request that the evidence be re-weighed. *See Cindy P. v. Kijakazi,* No. 20 C 6708, 2022 WL 2802328, at \*4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence."). Accordingly, the Court must reject Plaintiff's final argument.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is granted. The Court affirms the ALJ's decision.

SO ORDERED.                          ENTERED:

DATE:    __January 26, 2024__        _____
                                     **HON. MARIA VALDEZ**
                                     **United States Magistrate Judge**

19